# EXHIBIT A

01238428

**APPLICATION FOR REGISTRATION**

**AS A FOREIGN LIMITED LIABILITY COMPANY**

**OF**

**COHO HOLDINGS, LLC**

**FILED**

SEP 2 5 2001

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

Pursuant to M.G.L c. 156C, Section 48, the undersigned, CoHo Holdings, LLC, a Delaware Limited Liability Company, duly formed pursuant to Chapter 18, Title 6 of the Delaware Code and the acts amendatory thereof and supplemental thereto (known, identified and referred to as the "Delaware Limited Liability Company Act"), hereby makes application for registration as a foreign limited liability company:

FIRST:  The name of the limited liability company is CoHo Holdings, LLC (the "Company").

SECOND:  The federal employer identification number for the Company is 04-3462043

THIRD:  The Company was organized on August 2, 2001 in the State of Delaware

FOURTH:  The general character of the business which the Company proposes to do in the Commonwealth is to engage in the research, development, manufacture and sale of optical devices and in general to do anything permitted by all present and future laws of the Commonwealth of Massachusetts applicable to limited liability companies, including without limitation, becoming a partner in a general or limited partnership or becoming a member of a limited liability company

FIFTH:  The Company has two (2) Managers, whose names and addresses are as follows:

Douglas S Hobbs
1998 Massachusetts Ave
Lexington, MA 02421

James J. Cowan
9 Winston Road
Lexington, MA 02421

SIXTH:  The business address of the Company's principal office is 15 A Street, Burlington, MA 01803

SEVENTH:    The business address of the Company's principal office in the Commonwealth of Massachusetts is 15 A Street, Burlington, MA 01803

EIGHTH:    The resident agent for service of process in the Commonwealth of Massachusetts is Douglas S Hobbs, 15 A Street, Burlington, MA 01803.

NINTH:    The Company shall continue in existence until terminated in accordance with the terms set forth in its Limited Liability Company Agreement

Executed on September 20, 2001

Douglas S Hobbs, Manager

TRA 1565501v1

*State of Delaware*

## Office of the Secretary of State

PAGE  1

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "COHO HOLDINGS LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-FIRST DAY OF SEPTEMBER, A.D. 2001.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE NOT BEEN ASSESSED TO DATE.



*Harriet Smith Windsor, Secretary of State*

3416267  8300

010468137

AUTHENTICATION: 1352666

DATE: 09-21-01

Ck.# 13/66

The Commonwealth of Massachusetts
Limited Liability Company
(General Laws, Chapter 156C)

Filed this _____ 25 _____ day _____ September _____ ,2001.

_William Francis Galvin_

WILLIAM FRANCIS GALVIN
SECRETARY OF THE COMMONWEALTH

MARK DEVITO

Phone: 617 542 6020

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT DEPARTMENT

                                               OF THE TRIAL COURT


SRU BIOSYSTEMS, INC.,                     )
                                          )
    Plaintiff                         )
                                          )
    v.                                )        CIVIL ACTION
                                          )        NO: 04-5628
DOUGLAS S. HOBBS,                         )
                                          )
    Defendant                         )
                                          )
                                          )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

      Pursuant to the provisions of Rule 33 of the Massachusetts Rules of Civil Procedure, the Defendant, Douglas Hobbs, ("Mr. Hobbs"), answers the Plaintiff's ("SRU") First Set of Interrogatories as follows.

## GENERAL OBJECTIONS

      The general objections set forth below are applicable to the Interrogatories in their entirety, as well as each individual Interrogatory.

1.    Mr. Hobbs objects to these Interrogatories to the extent they seek the disclosure of information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privileges.

2.    Mr. Hobbs objects to these Interrogatories to the extent that they exceed the scope of permissible discovery as set forth in Mass. R. Civ. P. 26 and 33.

3.    Mr. Hobbs objects to these Interrogatories to the extent that they are vague, overbroad, unduly burdensome, ambiguous, compound, confusing, incomprehensible, irrelevant, and/or otherwise not calculated to lead to the discovery of admissible evidence.

4.    Mr. Hobbs objects to these Interrogatories to the extent they seek information that is not within his possession, custody or control.

5.    Mr. Hobbs objects to these Interrogatories to the extent they ask the Defendant, a lay witness, to provide legal opinions and draw legal conclusions.

6.    Mr. Hobbs objects to the Definitions and Instructions accompanying these Interrogatories to the extent they seek to expand his obligation under the Massachusetts Rules of Civil Procedure.

7    The absence of a specific objection shall not be deemed to be an acknowledgment that the subject matter of the request is relevant to the litigation.

8    Subject to and without waving these objections, Mr. Hobbs reserves the right to amend his answers to disclose information that may come to his attention or become available in the future and to use such information in any legal proceeding.


**Interrogatory No. 1**

Identify all patents and patent applications naming Hobbs as an inventor, whether U.S. applications or foreign or international applications, and whether filed by Hobbs or others.

**Answer to Interrogatory No. 1**

Objection. Overbroad. Notwithstanding and without waving the objection, Mr. Hobbs states:

1.    US 6,870,624 "Optical wavelength resonant device for chemical sensing"

2.    US 6,810,164 "Optical beam steering system"

3.    US 6,791,757 "Optical device for filtering and sensing"

4.    US 6,704,474 "Optical beam steering system"

5.    US 6,285,817 "Holographic patterning method and tool for production environments"

6.    US 6,255,038 "Process for modulating interferometric lithography patterns to record selected discrete patterns in photoresist"

7.    US 6,185,019 "Holographic patterning method and tool employing prism coupling"

8.    US 6,088,505 "Holographic patterning method and tool for production environments"

9.    US 5,963,682 "Optical beam steering system"

10. US 4,998,787 "Method of fabricating a multiple holographic lens"

11. US 4,911,531 "Optical correlator system"

12. US2001/0035991 "Actively stabilized, single input beam, interference lithography system and method"

13. US2002/0168295 "Label-free high-throughput optical technique for detecting biomolecular interactions"

14. US2004/0132172 "Label-free high-throughput optical technique for detecting biomolecular interactions"

15. US2004/0156641 "Optical beam steering system"

**Interrogatory No. 2**

For each patent and application identified in Response to Interrogatory No. 1, identify every person or entity that has an ownership, security or contractual interest in each patent and application, including but not limited to entities that have been given such interest by assignment, transfer, conveyance, license, mortgage, lien, or grant of any security interest, and describe the nature of such interest.

**Answer to Interrogatory No. 2**

U.S. Patents 6,870,624, 6,791,757, and US2001/0035991 were filed by Mr. Hobbs and assigned to COHO Holdings LLC. U.S. Patents 6,810,164, 6,704,474, 5,963,682, and US2004/0156641 were filed by Raytheon Company. U.S. Patents 6,285,817, 6,255,038, 6,185,019, and 6,088,505 were filed by Mr. Hobbs and assigned to Holographic Lithography Systems, Inc. ("HLSI"). U.S. Patents 4,998,787 and 4,911,531 were filed by Grumman Aerospace Corporation. US2002/0168295 and US2004/0132172 were filed by the Plaintiff.

COHO Holdings LLC has been assigned the rights to U.S. Patents 6,870,624, 6,791,757, and US2001/0035991, and US2002/0168295

**Interrogatory No. 3**

For each patent and application identified in Response to Interrogatory No. 1, identify every person or entity to whom Hobbs has, or has attempted to, assign, transfer, convey, license, mortgage, or grant of any security interest in such patents or applications, and identify all persons with knowledge of such transaction, whether or not completed, and the date or contemplated date of such transaction.

**Answer to Interrogatory No. 3**

Objection. Vague and overbroad. Notwithstanding and without waving the objection, see answer to number 2 above. COHO Holdings LLC has been assigned the rights to U.S. Patents 6,870,624, 6,791,757, and US2001/0035991, and US2002/0168295.

**Interrogatory No. 4**

Identify each entity, including each corporation, company, foundation, partnership, proprietorship, association, organization, or group of natural persons in which Hobbs is or has been an officer, director, or partner, or in which Hobbs has or has had an ownership interest of 1% or greater.

**Answer to Interrogatory No. 4**

Objection. Vague, overbroad and exceeds the scope of permissible discovery as set forth in Mass. R. Civ. P. 26. Notwithstanding and without waving the objection, Mr. Hobbs is a Manager of COHO Holdings LLC, and the President of COHO's operating company, TelAztec LLC.

**Interrogatory No. 5**

For each ownership or security interest in COHO Holdings, identify each person or entity that holds such interest and describe the nature of the interest.

**Answer to Interrogatory No. 5**

Objection. Vague. Overbroad. Exceeds the scope of permissible discovery as set forth in Mass. R. Civ. P. 26. Notwithstanding and without waving the objection, Mr. Hobbs and Aztec Systems, Incorporated are the majority owners of COHO Holdings with a combined interest of 85%.

**Interrogatory No. 6**

For each ownership or security interest in BioAztec, identify each person or entity that holds such interest and describe the nature of the interest.

**Answer to Interrogatory No. 6**

Objection. Vague. Notwithstanding and without waving the objection, Mr. Hobbs states that he is not aware of any such entity.

**Interrogatory No. 7**

For each ownership or security interest in Aztec Systems, identify each person or entity that holds such interest and describe the nature of the interest.

**Answer to Interrogatory No. 7**

Objection. Overbroad, and the information requested is outside the scope of this discovery. Notwithstanding and without waving the objection, Mr. Hobbs has no ownership or interest in Aztec Systems.

**Interrogatory No. 8**

For each ownership or security interest in TelAztec, identify each person or entity that holds such interest and describe the nature of the interest.

**Answer to Interrogatory No. 8**

TelAztec is owned in its entirety by COHO Holdings LLC.

**Interrogatory No. 9**

Describe Hobbs' qualifications as an expert in holographic effects and structures as alleged in Paragraph 4 of Defendant's Answer and Affirmative Defenses.

**Answer to Interrogatory No. 9**

Mr. Hobbs has a degree in physics from Bucknell University and a Master's degree in electro-optics from Tufts University. Starting in 1985, Mr. Hobbs designed and fabricated holographic lenses for an optical correlator system being developed by Grumman Aerospace Corporation. Later Mr. Hobbs designed and fabricated one-dimensional grating structures to be used as sub-wavelength electrodes in an electro-optic beam director developed at Raytheon Company. Next in 1995, Mr. Hobbs became an entrepreneur and started the company Holographic Lithography Systems, or HLS. Mr. Hobbs developed holographic patterning methods and tool systems based on holographic lithography at HLS. Also at HLS Mr. Hobbs developed holographic patterning methods used to create sub-micron surface relief structures that functioned as anti-reflection surfaces, optical filters, optical switches, laser cavity filters, data storage arrays, miniature biochemical traps, alignment layers for liquid crystal displays, diffractive optics, and a variety of other nanostructure applications. After leaving HLS in 1999, Mr. Hobbs has focused on the design and fabrication of surface structure optical filters for use in telecommunication systems, displays, security devices, and temperature and chemical sensors.

**Interrogatory No. 10**

State the date when Defendant "conceived of the optical effect and hologram sensor structure that allows for the fabrication of a chemical or biological material detector" as alleged in paragraph 4 of Defendant's Answer and Affirmative Defenses, describe the circumstances surrounding such conception, all persons who witnessed or have knowledge regarding such conception, and identify all documents that refer to or relate to such conception.

**Answer to Interrogatory No. 10**

The conception was made in late summer of 2000. Mr. Hobbs discovered the underlying optical effect used in the production of a biological material detector as disclosed in a patent application filed by the plaintiff. The discovery was made in the course of theoretical modeling efforts conducted by Mr. Hobbs at the behest of Brian Cunningham of SRU. Because Mr. Hobbs and Mr. Cunningham were friends, neighbors, and colleagues that had worked together at Raytheon Company, Mr. Cunningham was aware of the focus of Mr. Hobbs's research into surface structure optical resonance effects. As early as April of 2000, Mr. Cunningham had related to Mr. Hobbs his goal of finding an optical resonance that could be used as a chemical sensor sensitive enough to compete with surface plasmon resonance sensors. He hoped to find a low cost sensor technology that could be developed at his new company SRU BioSystems, and was attracted by the narrow-band response, and inexpensive fabrication techniques of the holographic filters being developed by Mr. Hobbs. Throughout the spring and summer of 2000, Mr. Cunningham repeatedly asked Mr. Hobbs if the filters Mr. Hobbs was designing could be effective for detecting chemicals. After making the key discovery, Mr. Hobbs showed Mr. Cunningham the theoretical models and provided Mr. Cunningham with the software construct and background literature necessary to allow Mr. Cunningham to verify the discovery. Because of their friendship, Mr. Hobbs trusted that Mr. Cunningham would follow through with the verbal agreement they had discussed whereby Mr. Hobbs would patent and license the new effect for use by SRU, assist SRU in developing a biosensor based on the newly discovered response, and manufacture the surface structure holograms needed.

See the fifty-page memorandum from Mr. Hobbs dated October of 2001, which will be produced for inspection and copying at counsel's office.


**Interrogatory No. 11**

State the date when Defendant reduced to practice "the optical effect and hologram sensor structure that allows for the fabrication of a chemical or biological material detector" as alleged in paragraph 4 of Defendant's Answer and Affirmative Defenses, describe the circumstances surrounding such reduction to practice, all persons who witnessed or have knowledge regarding such reduction to practice, and identify all documents that refer to or relate to such conception.

**Answer to Interrogatory No. 11**

Upon information and belief, SRU filed provisional patent applications describing my new optical effect in late September of 2000. Refined and additional embodiments of the new idea were filed by SRU in December of 2000 and again in the late spring 2000. I filed a non-provisional patent application on the new idea as part of what has been issued as US Patent 6,791,757 on August 6, 2001. SRU filed a non-provisional patent application claiming priority from the September 2000, December 2000, and June 2001 provisional applications, on August 15, 2001. On that same date, August 15, 2001, SRU filed a second non-provisional application with a specification identical to the first filing, but with additional claims and without naming me as an inventor. I filed a non-provisional patent application in October 2001, taking priority from the September and December 2000 SRU filings, which has since been issued as U.S. Patent 6,870,624. These filings constitute constructive reductions to practice.

**Interrogatory No. 12**

For each of the claims in any patent or patent application that names Hobbs as an inventor that is related to the "novel optical effect and hologram sensor structure that allows for the fabrication of a chemical or biological material detector" as alleged in paragraph 4 of Defendant's Answer and Affirmative Defenses, state whether Hobbs believes he is properly an inventor of the claimed invention, the date when Hobbs conceived of the claimed invention, the date when the invention of each such claim was first actually reduced to practice, describe the circumstances surrounding each such conception and first reduction to practice, identify the person(s) most knowledgeable of each such conception and actual reduction to practice, and identify all documents and things that refer to or relate to each such conception or actual reduction to practice.

**Answer to Interrogatory No. 12**

Objection. Vague, overbroad and burdensome. Notwithstanding and without waving the objection, see answers to Interrogatories 10 and 11.

**Interrogatory No. 13**

For each of the claims in SRU's patent applications naming Douglas Hobbs as an inventor, state whether Hobbs believes he is properly an inventor of the subject matter of each such claim, the date when Hobbs conceived of such claim, the date when the invention of each such claim was first actually reduced to practice, describe the circumstances surrounding each such conception and first reduction to practice, identify the person(s) most knowledgeable of each such conception and actual reduction to practice, and identify all documents and things that refer to or relate to each such conception or actual reduction to practice.

**Answer to Interrogatory No. 13**

Objection. Vague as to which patent applications are referred to, and which claims are referred to. Notwithstanding and without waving the objection, Mr. Cunningham would be the person, beyond Mr. Hobbs, that would be the most knowledgeable of Mr. Hobbs's inventorship. See also answers to Interrogatories 10-12.

**Interrogatory No. 14**

For each of the claims in any patent application naming Douglas Hobbs as an inventor and related to biosensors, state whether Hobbs believes he is properly an inventor of the subject matter of each such claim, the date when Hobbs conceived of such claim, the date when the invention of each such claim was first actually reduced to practice, and describe the circumstances surrounding each such conception and first reduction to practice, identify the person(s) most knowledgeable of each such conception and actual reduction to practice, and identify all documents and things that refer to or relate to each such conception or actual reduction to practice.

**Answer to Interrogatory No. 14**

Objection. Vague and redundant with Interrogatories 12 and 13. Notwithstanding and without waving the objection, Mr. Hobbs repeats and reavers his responses to Interrogatories 10 through 13.

**Interrogatory No. 15**

With regard to Defendant's allegation in paragraph 5 of Defendant's Answer and Affirmative Defenses that "Cunningham has acknowledged that the Defendant owns the novel optical effect and hologram sensor structure disclosed to the Plaintiff by the Defendant in a meeting held at SRU on September 19, 2000," if such "acknowledge[ment]" was verbal, identify all documents and things that refer to or relate to the "acknowledge[ment]".

**Answer to Interrogatory No. 15**

Mr. Cunningham acknowledged the Defendant's ownership both verbally and in a written email sent to the Defendant after the September 19, 2000 meeting.

**Interrogatory No. 16**

Describe each of the facts that relate to your denial that "the Defendant's novel optical effect and hologram sensor structure, both conceived and demonstrated before the execution of the MOU, constitutes 'jointly-developed technology' under the MOU," as set forth in paragraph 9 in Defendant's Answer and Affirmative Defenses, and identify all documents that refer to or relate to this denial and all persons with knowledge of the facts.

**Answer to Interrogatory No. 16**

Objection. Vague. Overbroad. Notwithstanding and without waving the objection, the MOU applies to developments made after the execution date of October 25, 2000. The MOU relates only to technology developed jointly between myself and an employee of SRU. The novel optical effect that allows the fabrication of a biosensor was conceived of by me alone, and demonstrated, prior to the effective date of the MOU. Several rejected drafts of the MOU are relevant. Mr. Homer Pien and Mr. Cunningham of SRU, and Mr. Timothy Bancroft of the law firm of Goulston and Storrs, would have knowledge of these facts.

**Interrogatory No. 17**

Describe each of the facts that related to your allegation that "the plaintiff's complaint, and each count therein, is barred by the plaintiff's breach of implied covenant of good faith and fair dealing" as set forth in Defendant's Third Affirmative Defense, and identify all documents that refer to or relate to this allegation and all persons with knowledge of the facts.

**Answer to Interrogatory No. 17**

Objection. This question asks me to provide legal opinions and draw legal conclusions. However, I am not a lawyer. Notwithstanding and without waving the objection, SRU had its lawyer present me with several different and ambiguous drafts of the MOU in an attempt to have me sign away my rights in technologies I had developed on my own, and in a situation in which I did not have legal representation. I was lead to believe that the dealings between me and SRU were friendly and fair, and it turns out they were neither. I was also lead to believe that SRU would have me or an entity which I owned manufacture the holograms needed for the biosensor products that SRU was planning to market, as provided for in the MOU, but it turns out that SRU never intended to follow through with this. On information and belief based on the patent office web site, I also believe that SRU has unilaterally changed the named inventors in one or more patent applications it filed that named me as an inventor. SRU also has not assigned to me any of its rights in any technologies, despite SRU's agreement in the MOU to do so. See also the answer to Interrogatory 16.

**Interrogatory No. 18**

Describe each instance where SRU has not acted in good faith with regard any aspect of the Memorandum of Understanding executed on October 25, 2000, and for each instance, identify all documents that refer to or relate to this allegation and all persons with knowledge of each instance.

**Answer to Interrogatory No. 18**

See answer to Interrogatory 17.

**Interrogatory No. 19**

Describe each of the facts supporting your allegation that "the plaintiff's complaint, and each count therein, is barred based on the Doctrine of Unclean Hands" as set forth in Defendant's Second Affirmative Defense, and identify all documents that refer to or relate to this allegation and all persons with knowledge of the facts.

**Answer to Interrogatory No. 19**

See answer to Interrogatory 17.

**Interrogatory No. 20**

Identify each person whose files (including electronic files and email) were searched in response to Plaintiff's Request for Production of Documents served with or subsequent to these interrogatories and the production numbers of any documents produced in this litigation from that person's files.

**Answer to Interrogatory No. 20**

I have kept all of the files on the subject matter of this litigation. I searched my files, including electronic files and email. Copies of relevant documents will be produced for inspection and copying.

Signed under the pains and penalties of perjury this 26th day of April, 2005.

Douglas S. Hobbs

As to objections:

Brian M. Dingman (BBO #548979)
Jenifer E. Haeckl (BBO #632952)
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Westborough, MA 01581-3941
Phone: (508) 898-1501
Fax:   (508) 898-1502

Dated: April 26, 2005

13

## CERTIFICATE OF SERVICE

I, Brian M. Dingman, counsel for the defendant, hereby certify that on this date I served the foregoing on the plaintiff by faxing and mailing a copy thereof, postage prepaid, to counsel for the plaintiff, James Gumina, Esq., McDonnell, Boehnen, Hulbert & Berghoff, 300 South Wacker Drive, Chicago, IL 60606.

date:    April 26, 2005

_____

Brian M. Dingman

# EXHIBIT C

The Commonwealth of Massachusetts
William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512
Telephone: (617) 727-9640

**FEE: $ 125.00**

NOTE: PLEASE TYPE OR PRINT CLEARLY!

# MASSACHUSETTS CORPORATION ANNUAL REPORT

030040391

Federal Identification No. 04-3305187

1. The exact name of the corporation is:   AZTEC SYSTEMS, INC

2. Location of its principal office in Massachusetts: 9 WINSTON ROAD
   (number and street)

   LEXINGTON                    MA              02421
   (city or town)              (state)          (zip)

   NOTE: If corporation is organized wholly to do business outside Massachusetts, state location of that office also:

   _____  _____  _____  _____
   (number & street)        (city or town)    (state)        (zip)

3. Name and address of the Resident Agent, if any: N/A
                                                    (name)

   _____  _____                 _____
   (number & street)        (city or town)                   (zip)

4. Date of the end of the last fiscal year was:   December     31     2002
                                                  (month)      (day)   (year)

5. Check here if the corporation stock is publicly traded: ☐

6. The capital stock of each class as of the end of its last fiscal year was:

| CLASS OF STOCK | PAR VALUE PER SHARE STATE IF NO PAR | TOTAL AUTHORIZED BY ARTICLES OF ORGANIZATION OR AMENDMENTS | | TOTAL ISSUED AND OUTSTANDING |
|---|---|---|---|---|
| | | Number of Shares | Total Par Value | Number of Shares |
| COMMON: | 10. | 200,000 | 2,000,000. | 100 |
| PREFERRED: | | | | |

7. State the names and addresses of the officers specified below and of all the directors of the corporation, and the date on which the term of office of each expires:

| OFFICERS | NAME | ADDRESS Number, Street, City or Town, State, Zip Code | EXPIRATION OF TERM |
|---|---|---|---|
| PRESIDENT | JAMES J COWAN | 9 WINSTON ROAD, LEXINGTON, MA | * |
| TREASURER | JAMES J COWAN | 9 WINSTON ROAD, LEXINGTON, MA | * |
| CLERK | JOHN A SYM | 9 WINSTON ROAD, LEXINGTON, MA | * |
| DIRECTORS | JAMES J COWAN | 9 WINSTON ROAD, LEXINGTON, MA | * |
| | JOHN A SYM | 9 WINSTON ROAD, LEXINGTON, MA | * |

* UNTIL SUCCESSOR IS ELECTED AND DULY QUALIFIED

I, the undersigned, _____, being the _____

of the above-named corporation, in compliance with the General Laws, Chapter 156B, hereby certify that the above information is true and correct as of the dates shown. IN WITNESS WHEREOF AND UNDER PENALTIES OF PERJURY, I hereto sign my name on this

_____ 10 _____ day of ___ March _____, 20 03

Signature: _James J. Cowan_   Title: _President_

Contact Person CHRISTINA SYM        Contact Person Telephone #: 781-861-2067

257481
08-21-02

15dbmcar 4/6/00

# EXHIBIT D

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 04-5628

SRU Biosystems, Inc.
_____, Plaintiff(s)

v.

Douglas Hobbs
_____, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Timothy C. Blank, Esq. _____

plaintiff's attorney, whose address is 200 Clarendon St., Floor 27, Boston, MA 02116, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness Barbara J. Rouse hio, Esquire, at Boston, the _29th_ _____ day of _December_ _____, in the year of our Lord two thousand _2004_ _____

*Michael Joseph Donovan*

Clerk/Magistrate

NOTICE TO DEFENDANT — You need ... appear personally in court to answer the complaint, ...ut if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT

| | |
|---|---|
| SRU BIOSYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Douglas Hobbs, | ) |
| | ) |
| Defendant | ) |
| | ) |

Civil Action No. **04-5628**

RECEIVED

DEC 28 2004

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT

Plaintiff, SRU Biosystems, Inc., by and through its undersigned counsel, presents this Complaint for breach of contract and deceptive business practices against defendant, Douglas Hobbs, as follows:

### JURSDICTION AND VENUE

1.     Plaintiff, SRU Biosystems, Inc., is a Delaware corporation having its principal place of business at 14-A Gill Street, Woburn, Massachusetts 01801.  SRU Biosystems, Inc.'s predecessor SRU Biosystems LLC was a limited liability corporation organized under the laws of Delaware having the same principal place of business.  Collectively these companies are referred to as "SRU."

2.     Defendant, Douglas Hobbs ("Hobbs"), resides at 1998 Massachusetts Avenue, Lexington, Massachusetts.

1

**COUNT I**
**BREACH OF CONTRACT**

3.    SRU was formed in July 1, 2000 for the purpose of developing and

marketing a novel colorimetric resonant biosensor for use in biochemical and biological

testing, sensing and detection.

4.    As part of this business, Dr. Brian T. Cunningham, one of the founders of

SRU, conceived of a structure for a novel colorimetric resonant biosensor.

5.    After obtaining Hobb's agreement to keep all information with respect to

the biosensor technology confidential, on September 19, 2000, Dr. Cunningham disclosed

the concept of the biosensor to Hobbs.  On information and belief, prior to Dr.

Cunningham's disclosure Hobbs had no experience with biosensor devices.  The purpose

of the disclosure was to solicit Hobbs' assistance, as a consultant to SRU, to develop a

fully functional device.  Hobbs had experience in photolithography, a technology that

was at that time considered to be useful in developing a functional device.

6.    Dr. Cunningham, in conjunction Hobbs, demonstrated the viability of the

concept less than a month after Hobbs first became aware of the concept.

7.    At least as early as October 1, 2000, Hobbs began formally working as a

consultant for SRU.  Hobbs principal role was that of using photolithography to fabricate

the sensor device.  On information and belief, at this time, all work that Hobbs performed

with respect to any biosensor device was in conjunction with Dr. Cunningham and SRU.

Hobbs was fully compensated for the services he provided to SRU.

8.    On October 25, 2000, SRU and Hobbs executed a Memorandum of

Understanding ("MOU") "to clarify each party's obligations in the joint development of

2

the colorimetric resonant biosensor arrays as they may be applied to biochemical testing and detection." *See* Paragraph I. of the MOU, which is attached as Exhibit A, hereto.

9.     Pursuant to Paragraph III.2. of the MOU, Hobbs agreed to "Assign irrevocably and exclusively on a royalty free basis to SRU, and/or its designee, all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing, and/or detection."

10.     In consideration for the assignment of the rights, Hobbs not only received the compensation referenced in paragraph 8 *supra*, but also received an assignment of rights with respect to telecommunication applications of the technology and the right to negotiate for exclusive manufacturing rights for the colorimetric resonant biosensor arrays.

11.     Subsequent to the signing of the MOU, development of the biosensor technology continued.  Dr. Cunningham and Hobbs continued to work on the development of the biosensor, with Dr. Cunningham developing computer simulations of the device and Hobbs attempting to replicate the simulations and design.

12.     SRU filed the following U.S. Utility Patent Applications: U.S. Utility Patent Application Serial No. 09/929,957, filed August 15, 2001; U.S. Utility Patent Application Serial No. US01/50723, filed October 23, 2001; PCT Patent Application Serial No. US01/45455, filed October 23, 2001 and U.S. Utility Patent Application Serial No. 10/415,037, filed January 20, 2004 with the U.S. Patent and Trademark Office. These applications name Hobbs and a number of SRU employees as inventors.

13.     The subject matter of the applications is a colorimetric resonant biosensor for use in biochemical testing and detection.

14.     The subject matter of the applications is jointly developed technology pursuant to the terms of the MOU.

15.     SRU has asked Hobbs to execute an Assignment of the applications, but Hobbs has refused to execute the Assignment.

16.     Hobbs has refused to assign to SRU his rights associated with the jointly developed technology as it applies to biochemical and biological testing, sensing and/or detection.

17.     Hobbs' relationship with SRU ended on or about June 30, 2001.

18.     Hobbs' failure to assign these rights constitutes a willful and knowing breach of the terms of the MOU.

19.     Hobbs' breach of his contractual rights has caused SRU substantial damages.

## COUNT II
## UNFAIR AND DECEPTIVE TRADE PRACTICES

20.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-20 above.

21.     At all times relevant to this action, Plaintiff and Hobbs were engaged in trade or commerce. Hobbs' wrongful acts and omissions set forth herein, including but not limited to Hobbs' conduct in knowing disregard of known contractual arrangements for the purposes of securing benefits for himself, have been misleading, knowing and willful and constitute unfair and deceptive acts and practices within the meaning of M.G.L. c. 93A §§ 2 and 11.

22.     Hobbs' unfair and deceptive acts and practices took place primarily and substantially within the Commonwealth.

4

23.     Plaintiff has suffered loss of money or property as a result of Hobbs'
unfair and deceptive business acts and practices in an amount to be proven at trial, plus
interests costs and attorneys' fees.  All damages should be trebled pursuant to M.G.L. c.
93A.

24.     Plaintiff will continue to suffer loss of money or property if Hobbs
continues his unfair and deceptive business acts and practices.  Pursuant to M.G.L. c.
93A § 11, the Court should use its equitable powers to issue a permanent injunction to
Hobbs to execute an Assignment of the applications to SRU Biosystems or its designees.

## RELIEF REQUESTED

**Wherefore,** SRU Biosystems prays for judgment and relief including:

(A)    That the Court enter a permanent injunction ordering Douglas Hobbs to execute an Assignment of the applications to SRU Biosystems or its designee;

(B)    Award treble damages to SRU;

(C)    An assessment of costs and fees against Douglas Hobbs; and

(D)    Such other and further equitable relief as this Court may deem just and proper.

Respectfully submitted,

SRU Biosystems, Inc.
By its attorneys,

Timothy C. Blank (BBO# 548670)
Matthew M. Lyons (BBO# 657685)
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, MA 02116-5021
(617) 728-7100

OF COUNSEL:
James C. Gumina
MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
Phone: 312-913-2116
Fax: 312-913-0002

Dated:

6



Middlesex Sheriff's Office • Civil Process Division, P.O. Box 410180, Cambridge, MA 02141-1819 • (617) 547-1171

*Middlesex, ss.*

December 31, 2004

I hereby certify and return that on 12/30/2004 at 12:50PM I served a true and attested copy of the SUMMONS, COMPLAINT, CIVIL ACTION COVER SHEET in this action in the following manner: To wit, by leaving at the last and usual place of abode of DOUGLAS HOBBS, , 1998 MASS. Avenue, , LEXINGTON, MA. Attest ($5.00), Basic Service Fee ($20.00), Conveyance ($3.00), Postage and Handling ($1.00), Travel ($7.68) Total Charges $36.68

*Michael P. Doyle*
Deputy Sheriff

N.B. TO PROCESS SERVER:–
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

, 200 .

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No.

SRU BIOSYSTEMS, INC. , Plff(s).

v.

DOUGLAS HOBBS , Def(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# EXHIBIT E

# Table C-5.
## U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2004

| Circuit and District | Total Cases | | No Court Action | | Court Action: Before Pretrial | | During or After Pretrial | | Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months |
| TOTAL | 183,821 | 8.4 | 38,067 | 6.0 | 122,334 | 7.1 | 19,727 | 13.4 | 3,693 | 21.9 |
| DC | 2,214 | 10.6 | 995 | 8.8 | 1,149 | 12.3 | 37 | 24.5 | 33 | 35.0 |
| 1ST | 5,448 | 10.3 | 1,544 | 7.4 | 2,877 | 10.0 | 848 | 15.5 | 179 | 23.2 |
| ME | 543 | 7.6 | 203 | 4.8 | 219 | 7.8 | 92 | 30.9 | 29 | 15.8 |
| MA | 2,406 | 10.3 | 1,015 | 7.4 | 1,004 | 9.6 | 310 | 17.4 | 77 | 31.5 |
| NH | 486 | 8.7 | 76 | 4.3 | 196 | 4.9 | 204 | 14.4 | 10 | 19.5 |
| RI | 541 | 9.6 | 117 | 6.8 | 235 | 7.0 | 174 | 12.1 | 15 | 23.0 |
| PR | 1,472 | 13.5 | 133 | 12.4 | 1,223 | 13.7 | 68 | 18.0 | 48 | 22.0 |
| 2ND | 18,059 | 9.5 | 4,640 | 8.4 | 10,867 | 8.3 | 2,236 | 15.3 | 316 | 28.4 |
| CT | 1,722 | 10.9 | 1,160 | 9.1 | 488 | 11.0 | 28 | 32.5 | 46 | 32.0 |
| NY,N | 982 | 12.7 | 135 | 7.8 | 564 | 10.9 | 265 | 17.0 | 18 | 24.5 |
| NY,E | 5,364 | 10.8 | 1,111 | 7.4 | 3,504 | 10.1 | 636 | 16.8 | 113 | 31.5 |
| NY,S | 8,533 | 7.8 | 2,061 | 9.3 | 5,192 | 5.1 | 1,165 | 12.9 | 115 | 23.2 |
| NY,W | 1,144 | 11.9 | 147 | 8.9 | 846 | 10.0 | 139 | 17.0 | 12 | 37.0 |
| VT | 314 | 7.6 | 26 | 6.0 | 273 | 7.8 | 3 | - | 12 | 24.0 |
| 3RD | 18,155 | 7.0 | 3,439 | 5.1 | 11,971 | 7.7 | 2,378 | 13.5 | 367 | 22.7 |
| DE | 1,027 | 12.3 | 66 | 2.5 | 876 | 13.0 | 55 | 13.4 | 30 | 26.4 |
| NJ | 5,323 | 8.8 | 975 | 5.5 | 2,389 | 5.0 | 1,871 | 13.5 | 88 | 31.5 |
| PA,E | 7,233 | 6.4 | 952 | 5.3 | 5,909 | 5.6 | 242 | 11.4 | 130 | 16.7 |
| PA,M | 1,657 | 8.5 | 523 | 4.9 | 956 | 8.2 | 115 | 18.5 | 63 | 21.7 |
| PA,W | 2,603 | 10.0 | 844 | 8.0 | 1,617 | 10.8 | 87 | 25.0 | 55 | 31.5 |
| VI | 312 | 13.8 | 79 | 10.0 | 224 | 15.8 | 8 | - | 1 | - |
| 4TH | 13,815 | 8.7 | 2,834 | 5.0 | 9,172 | 8.5 | 1,510 | 10.0 | 299 | 16.9 |
| MD | 2,930 | 7.7 | 1,193 | 7.6 | 1,474 | 6.8 | 204 | 11.2 | 59 | 21.7 |
| NC,E | 911 | 10.0 | 166 | 7.9 | 721 | 10.5 | 8 | - | 16 | 21.8 |
| NC,M | 715 | 11.7 | 148 | 6.5 | 349 | 12.7 | 205 | 12.7 | 13 | 25.0 |
| NC,W | 708 | 9.7 | 195 | 8.3 | 391 | 9.7 | 115 | 16.7 | 7 | - |
| SC | 3,181 | 9.2 | 335 | 6.5 | 2,336 | 7.1 | 414 | 16.5 | 96 | 17.3 |
| VA,E | 2,669 | 5.2 | 525 | 3.7 | 1,545 | 5.8 | 523 | 7.3 | 76 | 9.9 |
| VA,W | 1,114 | 9.3 | 196 | 8.0 | 870 | 10.4 | 29 | 11.0 | 19 | 16.0 |
| WV,N | 601 | 7.0 | 48 | 8.2 | 537 | 7.4 | 10 | 13.0 | 6 | - |
| WV,S | 986 | 11.1 | 28 | 5.0 | 949 | 11.4 | 2 | - | 7 | - |

# Table C-5. (March 31, 2004—Continued)

Court Action spans the Before Pretrial, During or After Pretrial, and Trial column groups.

| Circuit and District | Total Cases | | No Court Action | | Before Pretrial | | During or After Pretrial | | Trial | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **5TH** | **23,239** | **8.4** | **3,903** | **8.8** | **16,868** | **7.4** | **1,956** | **12.7** | **512** | **18.9** |
| LA,E | 2,808 | 9.6 | 30 | 2.0 | 1,586 | 6.2 | 1,076 | 12.5 | 116 | 16.2 |
| LA,M | 710 | 11.7 | 6 | – | 700 | 11.9 | | – | 4 | – |
| LA,W | 1,644 | 12.7 | 697 | 11.2 | 861 | 11.9 | 28 | 19.4 | 58 | 21.3 |
| MS,N | 1,165 | 9.8 | 158 | 5.3 | 828 | 9.1 | 163 | 15.6 | 36 | 22.8 |
| MS,S | 3,371 | 8.7 | 1,478 | 8.0 | 1,824 | 7.0 | 5 | – | 64 | 18.5 |
| TX,N | 3,643 | 6.8 | 176 | 4.3 | 3,386 | 6.7 | 4 | – | 77 | 20.2 |
| TX,E | 2,244 | 6.2 | 163 | 10.5 | 1,907 | 5.7 | 127 | 12.0 | 47 | 18.8 |
| TX,S | 5,416 | 5.9 | 484 | 7.9 | 4,351 | 4.9 | 525 | 11.2 | 56 | 18.2 |
| TX,W | 2,218 | 8.8 | 711 | 8.8 | 1,425 | 8.1 | 28 | 13.0 | 54 | 17.3 |
| **6TH** | **16,920** | **10.2** | **3,317** | **6.6** | **10,372** | **9.2** | **2,900** | **13.9** | **331** | **20.8** |
| KY,E | 2,037 | 11.8 | 140 | 5.1 | 1,834 | 11.6 | 38 | 17.3 | 25 | 17.5 |
| KY,W | 1,221 | 10.8 | 184 | 7.9 | 883 | 9.4 | 138 | 15.0 | 16 | 21.0 |
| MI,E | 3,679 | 9.6 | 881 | 5.0 | 1,456 | 7.7 | 1,287 | 15.0 | 55 | 24.8 |
| MI,W | 1,045 | 8.9 | 138 | 3.1 | 872 | 9.8 | 13 | 19.0 | 22 | 17.5 |
| OH,N | 3,104 | 8.7 | 910 | 6.2 | 1,436 | 8.1 | 700 | 10.6 | 58 | 20.0 |
| OH,S | 2,361 | 12.3 | 807 | 9.6 | 1,262 | 12.4 | 251 | 10.8 | 41 | 24.0 |
| TN,E | 1,344 | 11.3 | 186 | 8.4 | 655 | 9.9 | 469 | 16.5 | 34 | 24.0 |
| TN,M | 1,325 | 11.2 | 27 | 4.5 | 1,249 | 10.6 | 2 | – | 47 | 16.0 |
| TN,W | 804 | 10.3 | 44 | 6.0 | 725 | 10.7 | 2 | – | 33 | 19.7 |
| **7TH** | **16,078** | **6.1** | **3,035** | **5.7** | **11,110** | **5.4** | **1,681** | **12.2** | **252** | **24.0** |
| IL,N | 9,279 | 5.3 | 2,022 | 5.8 | 6,496 | 4.6 | 632 | 13.4 | 129 | 27.3 |
| IL,C | 771 | 8.0 | 158 | 7.0 | 579 | 8.6 | 10 | 20.5 | 24 | 21.0 |
| IL,S | 820 | 9.6 | 134 | 5.2 | 631 | 9.4 | 27 | 22.7 | 24 | 24.0 |
| IN,N | 1,354 | 9.3 | 189 | 6.0 | 628 | 6.9 | 513 | 13.3 | 28 | 22.0 |
| IN,S | 2,366 | 11.2 | 233 | 4.5 | 1,863 | 11.0 | 252 | 16.5 | 24 | 22.0 |
| WI,E | 994 | 7.6 | 250 | 4.6 | 701 | 8.2 | 29 | 18.0 | 18 | 21.0 |
| WI,W | 494 | 4.3 | 49 | 2.2 | 212 | 3.0 | 218 | 6.0 | 15 | 9.0 |
| **8TH** | **12,061** | **9.7** | **2,647** | **8.5** | **7,854** | **8.0** | **1,252** | **13.0** | **308** | **19.2** |
| AR,E | 1,543 | 12.3 | 338 | 12.4 | 1,131 | 11.8 | 21 | 16.0 | 53 | 20.0 |
| AR,W | 1,044 | 11.2 | 14 | 2.0 | 986 | 10.9 | 11 | 13.0 | 33 | 14.8 |
| IA,N | 434 | 11.5 | 54 | 5.6 | 346 | 11.7 | 7 | – | 11 | 20.0 |
| IA,S | 610 | 10.9 | 52 | 4.0 | 346 | 7.4 | 199 | 15.1 | 25 | 20.0 |
| MN | 3,773 | 6.5 | 665 | 4.9 | 2,226 | 5.8 | 847 | 10.1 | 36 | 23.5 |
| MO,E | 1,694 | 9.7 | 488 | 9.4 | 1,152 | 9.8 | 2 | – | 52 | 18.1 |
| MO,W | 1,849 | 10.9 | 758 | 10.0 | 980 | 11.5 | 79 | 16.6 | 32 | 18.7 |
| NE | 725 | 10.2 | 21 | 4.0 | 601 | 9.1 | 60 | 15.9 | 43 | 17.0 |
| ND | 258 | 9.4 | 78 | 5.4 | 162 | 10.2 | 7 | – | 11 | 18.0 |
| SD | 331 | 10.4 | 179 | 9.3 | 123 | 10.3 | 19 | 16.4 | 10 | 23.0 |

# Table C-5. (March 31, 2004—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | **29,270** | **8.3** | **8,951** | **6.2** | **17,848** | **8.2** | **1,967** | **13.9** | **504** | **23.5** |
| AK | 294 | 9.1 | 2 | - | 280 | 8.5 | 1 | - | 11 | 29.0 |
| AZ | 2,093 | 10.4 | 546 | 9.6 | 1,483 | 11.6 | 9 | - | 55 | 30.0 |
| CA,N | 4,120 | 8.0 | 1,435 | 5.4 | 1,259 | 9.4 | 1,362 | 11.1 | 64 | 23.0 |
| CA,E | 2,138 | 9.8 | 499 | 8.5 | 1,603 | 9.9 | 5 | - | 31 | 29.0 |
| CA,C | 9,670 | 7.0 | 3,688 | 7.0 | 5,806 | 6.6 | 29 | 13.5 | 147 | 19.6 |
| CA,S | 2,009 | 6.9 | 85 | 3.9 | 1,904 | 6.2 | - | - | 20 | 28.0 |
| HI | 912 | 14.9 | 350 | 8.9 | 271 | 9.7 | 277 | 72.6 | 14 | 31.0 |
| ID | 431 | 12.2 | 22 | 4.0 | 329 | 10.0 | 64 | 16.6 | 16 | 18.5 |
| MT | 603 | 12.4 | 109 | 8.4 | 327 | 9.8 | 142 | 17.3 | 25 | 20.4 |
| NV | 1,760 | 7.0 | 312 | 5.3 | 1,413 | 8.3 | 2 | - | 33 | 27.5 |
| OR | 1,583 | 9.5 | 517 | 7.9 | 984 | 9.6 | 47 | 17.5 | 35 | 24.4 |
| WA,E | 670 | 9.4 | 75 | 7.7 | 571 | 9.9 | 18 | 13.0 | 6 | - |
| WA,W | 2,912 | 6.3 | 1,304 | 4.2 | 1,554 | 8.1 | 10 | 14.0 | 44 | 15.8 |
| GUAM | 35 | 11.0 | 5 | - | 28 | 10.4 | 1 | - | 1 | - |
| NMI | 40 | 8.7 | 2 | - | 36 | 8.0 | - | - | 2 | - |
| **10TH** | **8,928** | **9.2** | **928** | **6.2** | **6,412** | **8.9** | **1,347** | **12.1** | **241** | **20.0** |
| CO | 2,012 | 8.2 | 31 | 4.7 | 1,665 | 7.2 | 244 | 23.0 | 72 | 28.7 |
| KS | 1,310 | 9.6 | 291 | 8.2 | 948 | 9.3 | 42 | 17.4 | 29 | 22.0 |
| NM | 1,326 | 10.3 | 55 | 4.8 | 843 | 9.7 | 391 | 12.6 | 37 | 22.0 |
| OK,N | 747 | 9.6 | 23 | 3.2 | 694 | 9.7 | 11 | 18.0 | 19 | 19.0 |
| OK,E | 512 | 8.4 | 102 | 5.2 | 373 | 8.9 | 27 | 8.9 | 10 | 12.5 |
| OK,W | 1,508 | 8.8 | 359 | 5.5 | 612 | 8.3 | 502 | 9.8 | 35 | 13.3 |
| UT | 1,228 | 11.7 | 15 | 8.5 | 1,174 | 11.0 | 21 | 18.0 | 18 | 21.0 |
| WY | 285 | 9.2 | 52 | 4.4 | 103 | 8.6 | 109 | 10.7 | 21 | 13.5 |
| **11TH** | **19,634** | **8.1** | **1,834** | **6.1** | **15,834** | **7.9** | **1,615** | **13.3** | **351** | **20.5** |
| AL,N | 2,710 | 8.5 | 578 | 8.7 | 2,027 | 8.2 | 74 | 17.9 | 31 | 25.0 |
| AL,M | 870 | 10.6 | 15 | 2.0 | 826 | 9.7 | 15 | 14.4 | 14 | 15.4 |
| AL,S | 716 | 8.2 | 149 | 7.0 | 536 | 8.8 | 21 | 15.5 | 10 | 15.4 |
| FL,N | 752 | 7.3 | 143 | 7.3 | 592 | 7.2 | 4 | - | 13 | 22.0 |
| FL,M | 4,823 | 8.3 | 193 | 7.2 | 4,502 | 7.5 | 54 | 20.6 | 74 | 19.0 |
| FL,S | 5,292 | 6.8 | 313 | 3.6 | 4,472 | 5.5 | 393 | 11.3 | 114 | 19.2 |
| GA,N | 3,183 | 8.8 | 294 | 4.8 | 1,793 | 6.8 | 1,033 | 13.7 | 63 | 19.6 |
| GA,M | 759 | 11.5 | 101 | 8.6 | 625 | 11.1 | 13 | 16.0 | 20 | 22.7 |
| GA,S | 529 | 9.4 | 48 | 9.0 | 461 | 9.4 | 8 | - | 12 | 28.5 |

NOTE: MEDIAN TIME INTERVALS COMPUTED ONLY IF 10 OR MORE CASES. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.

# EXHIBIT F

**Dechert** LLP

Timothy C. Blank
Direct Tel: (617) 728-7154
Direct Fax: (215) 761-0754
timothy.blank@dechert.com

June 24, 2005

BOSTON

BRUSSELS

CHARLOTTE

FRANKFURT

HARRISBURG

HARTFORD

LONDON

LUXEMBOURG

MUNICH

NEW YORK

NEWPORT BEACH

PALO ALTO

PARIS

PHILADELPHIA

PRINCETON

SAN FRANCISCO

WASHINGTON

**VIA HAND DELIVERY**

Helen Foley-Bousquet
Kay DeSimone
Clerks to The Honorable
 Judge Allan van Gestel
Suffolk Superior Court
Three Pemberton Square, Room 1309
Boston, MA 02109

Re:    **SRU Biosystems, Inc. v. Douglas Hobbs**
         **Civil Action No. 04-5628 - BLS**

Dear Ms. Foley-Bousquet and Ms. DeSimone:

Pursuant to Superior Court Rule 9A(e)(1), I enclose for filing SRU Biosystems, Inc.'s Emergency Motion for a Protective Order. We respectfully request that this matter be set for hearing before the Court as soon as possible. Counsel for plaintiff is available early next week, either in person or by telephone.

Thank you for your courtesy.

Very truly yours,

Timothy C. Blank

TCB/dmz
Enclosure
cc:    Brian M. Dingman, Esq. (via email; w/out enclosures & overnight mail w/enc.)

9690476.1.LITIGATION

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, SS**                                    **SUPERIOR COURT**

|  |  |
|---|---|
| ) | |
| ) | |
| SRU Biosystems, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 04-5628 |
| ) | |
| v. ) | |
| ) | |
| Douglas Hobbs, ) | |
| ) | |
| Defendant ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiff, SRU Biosystems, Inc. ("SRU") hereby files this emergency motion

pursuant to Superior Court Rule 9A(e)(1) for entry of the attached Protective Order ("the

Proposed Protective Order," Exhibit A).

### I.      This Motion is An "Emergency" Motion Because of Defendant's Delay

Defendant has engaged in a series of delay tactics that have made it necessary for

SRU to file this Motion as an "Emergency" Motion.  Pursuant to this Court's Order on

Rule 16 Scheduling Conference, SRU must designate its expert(s), answer expert

interrogatories and serve expert reports on or before September 30, 2005.  *See* Exhibit B.

SRU has been attempting to get discovery from the Defendant for nearly four months, but

Defendant has consistently delayed this process, and his refusal to agree on a Protective

Order is merely another tactic that he is using for delay.

SRU served its Interrogatories on February 28, 2005, and served its Requests for

Documents on March 8, 20005.  Pursuant to MASS R. CIV. P. 33 and 34, Defendant's

1

answers to the Interrogatories were due on April 14, 2005, and responses to the

Document Requests were due April 7, 2005. The Defendant provided Answers to

Interrogatories on April 26, 2005, but did not provide responses to the Document

Requests.

Defendant's Answers to Interrogatories do not mention the need for a Protective

Order. SRU's counsel corresponded with Defendants' counsel on May 6, 2005 in an

effort address the deficiencies in the Answers, and to determine the status of the

responses to the Document Requests. Following that correspondence, SRU attempted to

contact Defendants' counsel by telephone pursuant to Superior Court Rule 9(c), but

Defendant's counsel failed to respond to any telephone messages. Thus, SRU was forced

to file a Motion to Compel on May 26, 2005. *(See* Exhibit C.

Defendant filed his Opposition to SRU's Motion to Compel on June 9, 2005. In

that Opposition, the Defendant suggested, for the first time and **over three months after**

**SRU served discovery,** that a Protective Order was necessary. While SRU does not

dispute the need for a Protective Order, the Defendant now refuses to agree on an Order

that provides the level of protection necessary to protect SRU's confidential trade secret

information.

Defendant has used the dispute over the Protective Order as a reason to further

delay discovery. SRU's counsel has offered to keep all documents or other information

produced by Defendant as "Confidential—Attorneys' Eyes Only" until a suitable

Protective Order can be agreed upon or entered by this Court in due course. *See* Exhibit

D. Even though Defendant delayed over three months just to even raise the issue of the

Protective Order, he has now refused to produce documents even on an Attorneys' Eyes

2

Only basis. Moreover, SRU's counsel, despite multiple tries, has been unable to engage

Defendant's counsel in a telephone conference on this issue, further delaying the case.

Initially, Defendant's counsel promised to check with the Defendant to determine

whether the interim agreement would be appropriate. Defendant's counsel initially

promised to answer by June 22, 2005. He has, however, failed to even offer the

professional courtesy of a refusal.

Given SRU's pending expert disclosure obligations, SRU can no longer tolerate

Defendant's strategy for delay. The Protective Order must be entered immediately so

that SRU can have access to the information it needs to take depositions, retain experts

and prepare expert reports.

## II.    Dispute Related to the Proposed Protective Order

This case is a breach of contract and unfair competition dispute that arises from

the Defendant's refusal to comply with his contractual obligations to assign certain patent

applications to SRU. Defendant worked as a consultant for SRU to help SRU develop

an optical biosensor. Although originally agreeing to do so, the Defendant has refused to

execute the Assignment documents related to the patent applications arising from the

technology. Thus, this dispute may require the disclosure of highly confidential technical

information related to the biosensor technology.

Regarding the Proposed Protective Order, the only substantive dispute that SRU is

aware of is the inclusion of the following language in paragraph 7:

> [A]ny individual, including Counsel, an advisor or an expert, who
> is given access to CONFIDENTIAL INFORMATION of another
> shall not counsel, assist or participate in any way with the
> preparation, filing or prosecution of any patent application, protest,
> public use proceeding, reissue, reexamination, citation of prior art
> under 35 U.S.C. § 301 or request for certificate of correction that is

in the field of optical biosensors for a period of eighteen (18) months after this litigation has terminated.

Exhibit A, ¶ 7. In essence, this provision prevents those attorneys who prosecute patent applications in the field of "optical biosensors" from having access to the "Confidential Information" produced in this litigation. This level of protection of confidential information is common in disputes involving patents where the parties are expected to produce highly sensitive trade secret information. *See Commissariat a L'Energie Atomique v. Dell Comp. Corp.*, No. 03-484, 2004 LEXIS 12782 (D. Del. May 25, 2004); *Cummins-Allison Corp. v. Glory Ltd.*, No. 02-C-7008, 2003 U.S. Dist LEXIS 23653 (N.D. Ill. Dec. 31, 2003); *Medtronic, Inc. v. Guidant Corp.*, Nos. 00-1473 and 00-2503, 2001 U.S. Dist. LEXIS 22805 (D. Minn. Dec. 19, 2001); *Davis v. AT&T Corp.*, No. 98-C-0189S(H), 1998 U.S. Dist. LEXIS 20417 (W.D.N.Y. Dec. 23, 1998); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488, 1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994).[1]

### III.    SRU May Be Substantially Prejudiced if Brian Dingman, Defendants' Patent Prosecutor and Trial Counsel, Has Access to SRU's Technical Information

Mr. Brian Dingman of Mirick, O'Connell, Demallie & Lougee, LLP is Defendants' trial counsel. Mr. Dingman has been prosecuting patent applications for the Defendant and his assignee, CoHo Holdings LLC, for several years. In fact, Mr. Dingman is listed on the attorney of record on two U.S. Patents issued to the Defendant: U.S. Patent Nos. 6,707,518 and U.S. 6,791,757. Mr. Dingman is also the attorney of record on a related patent, U.S. 6,707,518, filed by the Defendant's business partner, James Cowan, who has also assigned that patent to CoHo Holdings. SRU understands

---

[1] Copies of all the cases that do not appear in the Federal Reporters are attached as Exhibit E.

that Mr. Dingman is also prosecuting other patents related to biosensors for the Defendant and CoHo.

Unlike the Defendant, who has made no commercial progress with the technology at issue in this case, SRU has dedicated the last five years developing its biosensor technology. SRU has spent over twenty of million dollars developing the technology and has over twenty employees dedicated to the commercialization of products based upon the technology. As a result, SRU has substantial trade secret information that may be the subject of discovery in this case.

SRU has real cause for concern. The Defendant had access to SRU confidential information while he was a consultant for SRU. With this information , the Defendant filed several patent applications without SRU's knowledge and without rightfully naming one of SRU's founders, Dr. Brian Cunningham, as an inventor on the patents. SRU has sued the Defendant in U.S. District Court in Delaware under 35 U.S.C. § 256 to address this situation. A copy of SRU's Complaint in that litigation is attached as Exhibit F. Count I of the Delaware Complaint details how the Defendant has taken SRU's confidential technical information and obtained patents in his own name without accounting to SRU or Dr. Cunningham. Count II of the Complaint addresses how the Defendant and his patent counsel, including Mr. Dingman, engaged in "inequitable conduct" before the U.S. Patent and Trademark Office by filing the patent applications without naming Dr. Cunningham as an inventor. Mr. Dingman was aware that SRU contested the Defendant's claim to the patent, yet he failed to inform the PTO as he was under an ethical duty to do so pursuant to 37 C.F.R. 1.56. *See* Exhibit G.

5

Therefore, there is a substantial risk to now put more confidential information in

the hands of individuals who are actively prosecuting patents in the field of biosensors.

## IV.    The Prohibition That SRU Seeks Is Common in Patent Disputes to Protect Sensitive Technical Information

Massachusetts Rule of Civil Procedure 26(c) allows this Court to enter the

Proposed Protective Order:

> Upon motion by a party or by the person from whom discovery is
> sought, and for good cause shown, the court in which the action is
> pending ... may make any order which justice requires to protect a
> party or person from annoyance, embarrassment, oppression, or
> undue burden or expense, including one or more of the following
> ... (7) that a trade secret or other confidential research,
> development, or commercial information not be disclosed or be
> disclosed only in a designated way ... .

Courts have routinely recognized the importance of protecting technical information,

particularly in patent cases. *See Motorola*, 1994 U.S. Dist. LEXIS 20714, at *6 ("In a

patent case, maintaining the integrity of the protective order is an especially serious

concern."); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp.

20, 22 (D. Del. 1988) ("Courts dress technical information with a heavy cloak of judicial

protection because of the threat of serious economic injury to the discloser of scientific

information.").

Prosecuting patents is distinct from other legal duties and presents unique

opportunities for inadvertent disclosure. Deciding what to disclose to the PTO and how

to draft patent claims qualify as "advice and participation in . . . [a] client's decisions . . .

made in light of similar information about a competitor." *Medtronic*, 2001 U.S. Dist.

LEXIS 22805, at *13 (quoting *U.S. Steel v. United States*, 730 F.2d 1465, 1469 n.3 (Fed.

Cir. 1984)). "Prosecuting a patent requires a working knowledge of the proposed device

and its relationship to prior art. Such an intimate relationship with the device itself makes

6

a limit on [trial] counsel's ability to prosecute patents appropriate." *Medtronic* at *14. Patent prosecution attorneys routinely engage in activities that define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, because patent prosecution attorneys "can make the [patent] claims read on new products and new directions ...." *Motorola* at *4.

The court in *Motorola* aptly summarized the evident conflict when trial counsel act as patent prosecutors:

> [Defendant's trial counsel] is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a Sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be.

*Id.* at *5.

## V.    Trial Counsel in This Litigation Must Be Precluded from Prosecuting Patent Applications in the Area of Optical Biosensors

Given Mr. Dingman's role as trial counsel in this litigation, he will have access to SRU confidential information.  As the courts have made clear, SRU's confidential information is likely to "taint" Mr. Dingman's understanding of the field of biosensors and it would be a "Sisyphean task" for Mr. Dingman to separate the information he learned from SRU from his role of prosecutor of other patents.  *Id.*  This is true "no matter now intelligent, dedicated or ethical" that Mr. Dingman may be.  *Id.*  SRU has invested over twenty million dollars developing its biosensor technology.  The Proposed

Order helps to protect SRU's substantial investment by preventing patent attorneys who prosecute patent applications for competitors from having access to SRU's confidential information. The situation in this case is even more of a concern to SRU because, as SRU is addressing in the Delaware District Court, the Defendant has already misappropriated SRU's confidential information. Mr. Dingman has assisted the Defendant, knowingly or not, in this fraud. Given this history between the parties, the Proposed Protective Order not only makes sense, it is critical to protect SRU's confidential information.

The Proposed Protective Order does not disqualify Mr. Dingman or his firm. Mr. Dingman and the other attorneys at Mirick O'Connell must make a choice: they may either prosecute patent applications in the area of optical biosensors, or they may have access to SRU confidential information. If Mr. Dingman wishes to continue as trial counsel, he should be precluded from prosecuting patent application in the area of biosensors, including Defendant's applications, for at least eighteen months after the conclusion of this case.

## VI.    The Restrictions in the Protective Order are Reasonable

The restrictions in the Proposed Order are reasonable. They do not prevent all patent prosecution attorneys at Mirick O'Connell from prosecuting applications related to optical biosensors; they prevent only those counsel who are working on this litigation from prosecuting those applications. Moreover, the time limitation, 18 months from the conclusion of this litigation, is also reasonable.

Any prejudice to the Defendant is negligible compared to the risk of the inadvertent or intentional use or disclosure of SRU confidential information. Mr.

Dingman can simply transfer the Defendant's patent prosecution work to other attorneys

at his firm of fifty attorneys.   On the other hand, the improper use or disclosure of SRU's

confidential information could cost SRU millions of dollars, if not more.

**VII.    Conclusion**

SRU requests that the Court enter of the Proposed Protective Order that is

attached as Exhibit A.

**REQUEST FOR HEARING**

Pursuant to Superior Court Rule 9A(c)(2), Plaintiffs hereby request a hearing on

its Emergency Motion for a Protective Order.

Respectfully submitted

SRU Biosystems, Inc.
By its Attorneys,

_____
Timothy C. Blank (BBO# 548670)
Matthew M. Lyons (BBO# 657685)
DECHERT LLP
200 Clarendon Street
27th Floor
Boston, Massachusetts
617-728-7100

Of Counsel:
John McDonnell
James Gumina
Patrick Gattari
Paula Fritsch
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
Tel 312-913-0001
Fax 312-913-0002

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS
SERVED UPON THE ATTORNEYS OF RECORD FOR EACH OTHER PARTY
BY MAIL (BY HAND) ON ____Jul 24, 2005____

# EXHIBIT G



## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 04-5628 BLS
(Judge van Gestel)

### SRU BIOSYSTEMS, INC.

vs.

### DOUGLAS HOBBS

### MEMORANDUM REGARDING
### PROTECTIVE ORDER ISSUES

This matter is before the Court on Plaintiff's Emergency Motion for Entry of Protective Order. The defendant, Douglas Hobbs ("Hobbs"), has declined to produce certain requested documents, citing the need for a protective order. The parties have attempted to negotiate such an order but have reached an impasse on whether the order should include a "patent prosecution bar."

After hearing the parties, this Court promised a quick response in order to break a discovery logjam. However, on reflection, the Court feels a need to study the issue more deeply and to consider some of the other portions of the proposed protective order. For that reason, the following interim order is issued.

### ORDER

The defendant, Douglas Hobbs, shall comply fully and forthwith with the outstanding discovery propounded to him, particularly the request for production of documents. Any discovery so produced, if deemed confidential and so marked, shall be for attorneys' eyes only, until a further and more detailed confidentiality order can be crafted by the parties and approved

by the Court.

Counsel for the parties are directed to give further consideration to the proposed Stipulated Protective Order in an effort to attempt to address the prosecution bar issues. Also, this Court will not approve any protective order that permits counsel to file documents in a sealed envelope, such as is called for in Section 17 of the proposed order. Instead, before anything is filed with the Court or in the Clerk's Office, the filing party must, in each instance, first comply fully with the Uniform Rules on Impoundment Procedure.

If counsel are unable to reach agreement on a proposed protective order, the Court will accept drafts from each side and will make a ruling thereon. In that regard, the Court expects to be able to complete its assessment of the "prosecution bar" issue by July 8, 2005, and requests counsel to advise it of the status of their further negotiations and to deliver any proposals by 2:00 p.m. on that date.

Allan van Gestel
Justice of the Superior Court

DATED:       June 29, 2005

2

# EXHIBIT H



Suite 2600
160 Elgin Street
Ottawa, Ontario
Canada K1P 1C3
Telephone (613) 233-1781
Facsimile (613) 563-9869
www.gowlings.com

June 30, 2005

VIA FACSIMILE

François Baril
Direct (613) 786-8698
Direct Fax (613) 788-3580
francois.baril@gowlings.com
File No. L74160003

Marusyk Miller & Swain LLP / MBM & Co.
270 Albert Street, 14th Floor
Ottawa, ON, K1P 5G8

**Attention: Ms. Sarah Dale-Harris**

Dear Ms. Dale-Harris:

**Re: SRU Biosystems Inc. v. Hobbs, Cowen et al.**
**Court File Number: 05-CV-30946**
**Your File Number: 325-444lgb**

Thank you for forwarding to my office the confidential exhibits to your client's amended statement of claim and for consenting to extending the time for service of our Defence until June 30, 2005.

Our clients have now instructed us to challenge the Jurisdiction of the Ontario Court over this dispute. In addition to Jurisdiction *Simpliciter* we will also be challenging jurisdiction on the basis of forum *non-conveniens*.

To that effect, we enclose our draft Notice of Motion.

We are in the process of preparing the Motion Record, which will likely include Affidavits from both of the named individual Defendants on their own behalf and on behalf of the corporation.

I anticipate that this Motion will require more than two hours, which makes it necessary to obtain a special date from the Trial Coordinator (hence why I am serving you with a draft notice). Please contact my office so that we may discuss a timeline for dealing with this jurisdiction issue. I think September is a reasonable target that would allow for exchange of materials and cross-examination if necessary.

Given our intention to challenge the jurisdiction of the Ontario Superior Court, we will not be filing a Defence at this time lest this be considered as attornment. I therefore trust that you will not be taking any steps to note any of the Defendants in default.

I look forward to hearing from you.

Yours truly,

GOWLING LAFLEUR HENDERSON LLP

François Baril

FB:jrc

cc: H. D'Iorio

Court File No. 05-CV-30946

### ONTARIO
### SUPERIOR COURT OF JUSTICE

BETWEEN:

**SRU BIOSYSTEMS, INC.**

Plaintiff

- and -

**DOUGLAS S. HOBBS, JAMES J. COWAN and COHO HOLDINGS, LLC**

Defendants

## NOTICE OF MOTION

**THE DEFENDANTS** will make a motion to a judge, with notice, on **[DATE]** at **[TIME]** or as soon thereafter as the motion can be heard at the courthouse at 161 Elgin Street, Ottawa, Ontario.

**THE PROPOSED METHOD OF HEARING:** The motion is to be heard orally.

**THE MOTION IS FOR:**

1.  an order, pursuant to rule 17.06(2)(a), setting aside the service of the Statement of Claim and the Amended Statement of Claim and any order that authorized such service;

2.  in the alternative, an order, pursuant to rule 21.01(3)(a), dismissing this action for want of jurisdiction over the subject matter of the action;

3.  in the further alternative, an order, pursuant to rule 17.06(2)(c), dismissing this action on the ground that Ontario is not a convenient forum for the hearing of these proceedings;

4.  In the further alternative, an order, pursuant to rule 21.01(3)(c), dismissing this action or staying it pending the outcome of the parallel proceedings commenced in the United States and at the Federal Court of Canada, which involve the same parties and are in respect of the same subject matter;

5.  the Defendants' costs on a substantial indemnity basis; and

6.  such further and other relief as counsel may request and this Honourable Court may consider just.

THE GROUNDS FOR THE MOTION ARE:

### Jurisdiction *Simpliciter*

1.  There is no real and substantial connection between Ontario and either the Plaintiff or the Defendants. Nor is there any real and substantial connection between Ontario and the relevant transactions, agreements and/or wrongdoings alleged against the Defendants.

2.  The Plaintiff, SRU Biosystems, Inc. ("SRU"), has no known connections to Ontario. It is a Delaware corporation, having its principal place of business in Massachusetts, U.S.A.

3.  The corporate Defendant, CoHo Holdings, LLC ("CoHo"), has no connections to Ontario. It is a Delaware limited liability company, having its principal place of business in Massachusetts, U.S.A.

4.  The individual Defendants, Douglas S. Hobbs ("Hobbs") and James J. Cowan ("Cowan"), have no connection to Ontario. They are both U.S. citizens who reside in Massachusetts, U.S.A.

5.  All of the Agreements entered into between the parties were executed in Massachusetts, U.S.A. This case does not involve a question of Ontario law.

This case does not deal with Ontario property, a tort committed in Ontario, or even damages alleged to have been suffered in Ontario.

6. This case is about ownership of certain technologies developed in the U.S. by U.S. companies and/or individuals. The only Canadian connection is an application by CoHo for a Canadian patent in respect of said technology it claims to own and SRU's attempts to block the issuance of such a patent solely to CoHo on the basis that SRU has an ownership interest in the said technology. That issue does not involve Ontario law. Ownership of the technologies is an issue of U.S. focus. Issuance of Canadian patents is an issue for the Canadian Patent Office and the Federal Court. Patents are squarely the domain of the Federal Court.

## Duplication of Proceedings

7. This action is needlessly duplicative. SRU has already commenced several proceedings in various forums all pertaining to the ownership of the same technology.

8. On August 6, 2002, the Defendant CoHo filed an application for a Canadian Patent (Application No. 2,396,859) listing the Defendants Hobbs and Cowan as inventors.

9. On May 31, 2004, SRU and its principal, Brian Cunningham ("Cunningham"), filed an application with the Canadian Patent Office (the "Patent Application"), requesting that SRU and Cunningham be added as co-owner and co-inventor of the invention described in CoHo's patent application. On November 30, 2004, CoHo's Canadian solicitors asked the Commissioner of Patents to reject SRU's request. The Commissioner of Patents has not yet made a determination and accordingly CoHo's Patent Application remains in the name of CoHo as sole applicant.

10. On December 30, 2004, SRU filed a Complaint in Massachusetts, U.S.A. (the "Massachusetts action"), for breach of contract and unfair and deceptive trade

- 4 -

practices against the Defendant Hobbs, seeking an injunction ordering the Defendant Hobbs to execute an Assignment of various CoHo patent applications to SRU. These patent applications pertain to the same invention which is the subject of CoHo's Canadian patent application. On January 19, 2005, the Defendant Hobbs filed his Answer to the Complaint denying the allegations and pleading affirmative defenses including unclean hands and breach of an implied covenant of good faith and fair dealing. The determination of the Massachusetts action remains outstanding.

11. On April 7, 2005, SRU filed a Complaint for Correction of Inventorship and Declaratory Judgment of Patent Unenforceability against the Defendants in Delaware (the "Delaware action"), seeking an order declaring that SRU is the owner of an undivided interest in, and directing the Patent and Trademark Office to correct the inventorship of two U.S. patents owned by CoHo. These patents relate to the same invention CoHo sought to protect in Canada. On April 27, 2005, the Defendants filed their Answers to the Complaint, denying the allegations, and asserting Counterclaims for patent infringement. The determination of the Delaware action remains outstanding.

12. On May 3, 2005, SRU commenced two more proceedings against the Defendants, one in the Federal Court of Canada (the "Federal Court application") and the within action in the Ontario Superior Court of Justice (the "Ontario action").

13. In the Federal Court application (T-782-05), arising from the same purported set of events, SRU and Cunningham are essentially seeking injunctive relief, declarations and orders to the effect that SRU and Cunningham are co-owner and co-inventor of the invention CoHo seeks to patent in Canada. In particular, as the Patent Application remains outstanding, SRU is seeking an order directing the Commissioner of Patents to include Cunningham as an inventor. The determination of the Federal Court Application remains outstanding.

- 5 -

14. In this Ontario action, arising from the same purported set of events, SRU alleges the same or substantially similar causes of action and seeks the same or substantially similar relief, including a declaration of exclusive ownership of patents and an injunction ordering the Defendants to execute an Assignment of various CoHo patent applications to SRU.

15. These five proceedings – two American and three Canadian – raise essentially the same issues – in fact and law – who has the right to patent the invention to which each party claims ownership in whole or in part.

**_Forum Non Conveniens_**

16. Ontario is not a convenient forum for the hearing of this proceeding. In fact, Ontario is perhaps the most inconvenient of the various forums so far chosen by the Plaintiff for the adjudication of its dispute over ownership of the invention.

17. None of the witnesses reside in Canada. None of the documents are in Canada. The law applicable to the determination of ownership, issues and/or the interpretation of various agreements, is likely to be Massachusetts law.

18. The Defendant pleads and relies upon rules 6.01, 17.06 and 21.01 of the _Rules of Civil Procedure_, R.R.O. 1990, Reg. 194.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

1. the Affidavit of Douglas S. Hobbs, sworn _____, 2005;

2. the Affidavit of James J. Cowan, sworn _____, 2005; and

3. such further materials as counsel may advise and this Honourable Court may permit.



---

SRI BIOSYSTEMS, INC.                    -and-          DOUGLAS S. HOB

                                                        COWAN and COHO
        Plaintiff

                                              Court File

                                              *ONTAR*
                                              **SUPERIOR COURT**

                                              Proceeding commer


                                              **NOTICE OF N**


                                              **GOWLING LAFLEUR H**
                                              Barristers & Solicitors
                                              Suite 2600, 160 Elgin St
                                              Ottawa, ON  K1P 1C3

                                              **François Baril**

                                              Law Society Reg. No. 40

                                              Tel:   (613) 233-1781
                                              Fax:   (613) 563-9869

                                              Solicitors for the Defenda

                                              Ottawa Box. No. 145

L74160003\OTT_LAW\ 10674751\3
DRAFT 6/30/05

# EXHIBIT I



Suite 2600
160 Elgin Street
Ottawa, Ontario
Canada K1P 1C3
Telephone (613) 233-1781
Facsimile (613) 563-9869
www.gowlings.com

François Baril
Direct (613) 786-8698
Direct Fax (613) 788-3580
francois.baril@gowlings.com

# Facsimile

|  |  |  |  |
|---|---|---|---|
| **To:** | Mr. Scott Miller | | |
| **Company:** | Marusyk Miller & Swain LLP / MBM & Co. | **City/Country:** | Ottawa, Canada |
| **Fax Number:** | (613) 563-7671 | **Phone Number:** | (613) 567-0762 |

**Date:** July 6, 2005

**Re:** SRU Biosystems Inc. v. Hobbs, Cowen et al.
Court File Number: 05-CV-30946
Your File Number: 325-444lgb

**Total Pages:** 2 (including cover)

**File Number:** L74160003

**CopyTrak #:** 1159

Please see attached.

If there is a problem with transmission or all pages are not received, please call J. Renée Clark at (613) 233-1781 ext. 57431 for retransmission.

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (call us collect), and return the original to us by postal service at the address noted above. Thank you.

| Montréal | Ottawa | Toronto | Hamilton | Waterloo Region | Calgary | Vancouver | Moscow |



Patent & Trade Mark Agents |

Suite 2600
160 Elgin Street
Ottawa, Ontario
Canada K1P 1C3
Telephone (613) 233-1781
Facsimile (613) 563-9869
www.gowlings.com

François Baril
Direct (613) 786-8698
Direct Fax (613) 788-3580
francois.baril@gowlings.com
File No. L74160003

July 4, 2005

**VIA HAND DELIVERY**

Superior Court of Justice - Civil Trial Coordinator
161 Elgin Street
Ottawa, ON  K2P 2K1

**Attention:   Mr. Tim Ginley**

Dear Mr. Ginley:

**Re:   SRU Biosystems, Inc. v. Douglas S. Hobbs et al.
        Court File Number: 05-CV-30946**

The Defendants intend to challenge jurisdiction in the abovementioned matter and accordingly need a one-day motion date before a judge. We understand that no dates are available in August but both parties request the earliest available date in September. We have canvassed the other side and we have both agreed that we will make ourselves available for any September date.

I look forward to hearing from you.

Yours truly,

**GOWLING LAFLEUR HENDERSON LLP**

François Baril

FB:jrc

cc:    Scott Miller

**MKipp**

| | |
|---|---|
| **From:** | Scott Miller [SMiller@mbm.com] |
| **Sent:** | Wednesday, July 13, 2005 7:41 PM |
| **To:** | Helene.Diorio@Gowlings.com |
| **Cc:** | Gattari, Patrick |

**Subject:** FW: (Our file: 325-444lga) Federal Court of Canada No. T-782-05

WITHOUT PREJUDICE

Dear Hélène,

The purpose of this email is to advise you that our client has given us strict instruction not to consent to any potential request for an extension of time to file the evidence of the Respondent due in the above noted matter on August 6, 2005. Our client has experienced significant delays in the Ontario and US proceedings involving our respective clients and insists that this matter proceed as quickly as possible.

If you have any questions, please do not hesitate to contact me.

Regards,

Scott Miller
B.A., LL.B.
Legal/Litigation

# MBM

Intellectual Property Law

Tel: 613-567-0762 ext. 1153
Fax: 613-563-7671
Email: smiller@mbm.com
Web: www.mbm.com

NOTE: Legal services are provided by Marusyk Miller & Swain LLP, a Limited Liability Partnership under the laws of Ontario.  Patent and trademark services are provided by MBM & Co.

NOTICE OF CONFIDENTIALITY: This message is intended for the individual or firm to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  All unauthorized use of the message is prohibited.  If you do receive this communication in error, please phone 613-567-0762 or email us immediately and delete this message.  Thank you

MISE EN GARDE CONCERNANT LA CONFIDENTIALITÉ: L'information contenue dans ce courriel est réservée exclusivement à l'usage personnel et confidentiel du destinataire indiqué ci-dessus. Ce message peut constituer une communication avocat-client et, à ce titre, il est confidentiel et visé par le secret professionnel. Tout emploi non autorisé de ce message est interdit. Si vous avez reçu cette communication par erreur, veuillez nous en aviser immédiatement par téléphone ou courriel et supprimer le message original. Merci.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2005, the attached **SRU'S ANSWERING**

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** was

served upon the below-named counsel of record at the address and in the manner indicated:

Dale R. Dube, Esquire                                                    <u>HAND DELIVERY</u>
Blank Rome LLP
1201 Market Street
Suite 800
Wilmington, DE  19801

Brian M. Dingman, Esquire                                      <u>VIA FEDERAL EXPRESS</u>
Mirick, O'Connell, DeMallie & Lougee, LLP
1700 West Park Drive
Westborough, MA  01581-3941


                                              <u>     /s/ *John G. Day*          </u>
                                              John G. Day