# EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                              SUPERIOR COURT

|  |  |
|---|---|
| SRU BIOSYSTEMS, INC., ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 04-5628 |
| ) | |
| Douglas Hobbs, ) | RECEIVED |
| ) | DEC 28 2004 |
| Defendant ) | SUPERIOR COURT · CIVIL |
|  | MICHAEL JOSEPH DONOVAN |
|  | CLERK / MAGISTRATE |

## COMPLAINT

Plaintiff, SRU Biosystems, Inc., by and through its undersigned counsel, presents this Complaint for breach of contract and deceptive business practices against defendant, Douglas Hobbs, as follows:

### JURSDICTION AND VENUE

1. Plaintiff, SRU Biosystems, Inc., is a Delaware corporation having its principal place of business at 14-A Gill Street, Woburn, Massachusetts 01801. SRU Biosystems, Inc.'s predecessor SRU Biosystems LLC was a limited liability corporation organized under the laws of Delaware having the same principal place of business. Collectively these companies are referred to as "SRU."

2. Defendant, Douglas Hobbs ("Hobbs"), resides at 1998 Massachusetts Avenue, Lexington, Massachusetts.

1

## COUNT I
## BREACH OF CONTRACT

3. SRU was formed in July 1, 2000 for the purpose of developing and marketing a novel colorimetric resonant biosensor for use in biochemical and biological testing, sensing and detection.

4. As part of this business, Dr. Brian T. Cunningham, one of the founders of SRU, conceived of a structure for a novel colorimetric resonant biosensor.

5. After obtaining Hobb's agreement to keep all information with respect to the biosensor technology confidential, on September 19, 2000, Dr. Cunningham disclosed the concept of the biosensor to Hobbs. On information and belief, prior to Dr. Cunningham's disclosure Hobbs had no experience with biosensor devices. The purpose of the disclosure was to solicit Hobbs' assistance, as a consultant to SRU, to develop a fully functional device. Hobbs had experience in photolithography, a technology that was at that time considered to be useful in developing a functional device.

6. Dr. Cunningham, in conjunction Hobbs, demonstrated the viability of the concept less than a month after Hobbs first became aware of the concept.

7. At least as early as October 1, 2000, Hobbs began formally working as a consultant for SRU. Hobbs principal role was that of using photolithography to fabricate the sensor device. On information and belief, at this time, all work that Hobbs performed with respect to any biosensor device was in conjunction with Dr. Cunningham and SRU. Hobbs was fully compensated for the services he provided to SRU.

8. On October 25, 2000, SRU and Hobbs executed a Memorandum of Understanding ("MOU") "to clarify each party's obligations in the joint development of

2

the colorimetric resonant biosensor arrays as they may be applied to biochemical testing and detection." *See* Paragraph I. of the MOU, which is attached as Exhibit A, hereto.

9. Pursuant to Paragraph III.2. of the MOU, Hobbs agreed to "Assign irrevocably and exclusively on a royalty free basis to SRU, and/or its designee, all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing, and/or detection."

10. In consideration for the assignment of the rights, Hobbs not only received the compensation referenced in paragraph 8 *supra*, but also received an assignment of rights with respect to telecommunication applications of the technology and the right to negotiate for exclusive manufacturing rights for the colorimetric resonant biosensor arrays.

11. Subsequent to the signing of the MOU, development of the biosensor technology continued. Dr. Cunningham and Hobbs continued to work on the development of the biosensor, with Dr. Cunningham developing computer simulations of the device and Hobbs attempting to replicate the simulations and design.

12. SRU filed the following U.S. Utility Patent Applications: U.S. Utility Patent Application Serial No. 09/929,957, filed August 15, 2001; U.S. Utility Patent Application Serial No. US01/50723, filed October 23, 2001; PCT Patent Application Serial No. US01/45455, filed October 23, 2001 and U.S. Utility Patent Application Serial No. 10/415,037, filed January 20, 2004 with the U.S. Patent and Trademark Office. These applications name Hobbs and a number of SRU employees as inventors.

13. The subject matter of the applications is a colorimetric resonant biosensor for use in biochemical testing and detection.

14. The subject matter of the applications is jointly developed technology pursuant to the terms of the MOU.

15. SRU has asked Hobbs to execute an Assignment of the applications, but Hobbs has refused to execute the Assignment.

16. Hobbs has refused to assign to SRU his rights associated with the jointly developed technology as it applies to biochemical and biological testing, sensing and/or detection.

17. Hobbs' relationship with SRU ended on or about June 30, 2001.

18. Hobbs' failure to assign these rights constitutes a willful and knowing breach of the terms of the MOU.

19. Hobbs' breach of his contractual rights has caused SRU substantial damages.

## COUNT II
## UNFAIR AND DECEPTIVE TRADE PRACTICES

20. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-20 above.

21. At all times relevant to this action, Plaintiff and Hobbs were engaged in trade or commerce. Hobbs' wrongful acts and omissions set forth herein, including but not limited to Hobbs' conduct in knowing disregard of known contractual arrangements for the purposes of securing benefits for himself, have been misleading, knowing and willful and constitute unfair and deceptive acts and practices within the meaning of M.G.L. c. 93A §§ 2 and 11.

22. Hobbs' unfair and deceptive acts and practices took place primarily and substantially within the Commonwealth.

23. Plaintiff has suffered loss of money or property as a result of Hobbs' unfair and deceptive business acts and practices in an amount to be proven at trial, plus interests costs and attorneys' fees. All damages should be trebled pursuant to M.G.L. c. 93A.

24. Plaintiff will continue to suffer loss of money or property if Hobbs continues his unfair and deceptive business acts and practices. Pursuant to M.G.L. c. 93A § 11, the Court should use its equitable powers to issue a permanent injunction to Hobbs to execute an Assignment of the applications to SRU Biosystems or its designees.

## RELIEF REQUESTED

**Wherefore**, SRU Biosystems prays for judgment and relief including:

(A) That the Court enter a permanent injunction ordering Douglas Hobbs to execute an Assignment of the applications to SRU Biosystems or its designee;

(B) Award treble damages to SRU;

(C) An assessment of costs and fees against Douglas Hobbs; and

(D) Such other and further equitable relief as this Court may deem just and proper.

                                Respectfully submitted,

                                SRU Biosystems, Inc.
                                By its attorneys,

                                _____

                                Timothy C. Blank (BBO# 548670)
                                Matthew M. Lyons (BBO# 657685)
                                DECHERT LLP
                                200 Clarendon Street
                                27th Floor
                                Boston, MA 02116-5021
                                (617) 728-7100

OF COUNSEL:
James C. Gumina
MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL 60606
Phone: 312-913-2116
Fax: 312-913-0002

Dated:

| CIVIL ACTION COVER SHEET | B.L.S. 04-5628 | Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| SRU Biosystems, Inc. | Douglas Hobbs |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Timothy C. Blank, Dechert LLP 200 Clarendon Street, Boston, MA 02116 Board of Bar Overseers number: 548670 | |

Origin Code
Original Complaint

RECEIVED DEC 28 2004
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BD.1 | Intellectual Property | (B) | ( ) Yes  ( ) No |

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This is a case under category BD.1 involving a claim to determine the use or status of intellectual property. The details are as follows. Defendant Douglas Hobbs ("Hobbs") worked for SRU Biosystems, Inc. ("SRU") as a consultant for the development of a novel colorimetric resonant biosensor. Before beginning work as a consultant, Hobbs agreed to keep all information relating to the biosensor technology confidential. Hobbs did not have experience with biosensor devices before working as a consultant to SRU. On October 25, 2000 Hobbs executed a Memorandum of Understanding ("MOU") in which he agreed to "Assign irrevocably and exclusively on a royalty free basis to SRU, and/or its designee, all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing, and/or detection." Subsequent to the signing of the MOU, SRU filed numerous patent applications relating to the development of the biosensor technology. The applications named Hobbs and a number of SRU employees as investors. SRU has asked Hobbs to execute an assignment of the applications pursuant to the terms of the MOU, but Hobbs has refused to execute the assignment. SRU now seeks an injunction for Hobbs to execute an assignment of the applications. SRU also seeks damages in an amount of at least $250,000 relating to Hobbs' refusal to assign the applications.

*A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: Dec 27, 2004

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 200___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)):

_____
_____

Dated:_____, 200___.          _____

**N.B. TO PROCESS SERVER:–**
PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

|  |
|---|
| , 200 . |

---

**Commonwealth of Massachusetts**

SUFFOLK, ss.          SUPERIOR COURT DEPARTMENT
                      OF THE TRIAL COURT
                      CIVIL ACTION
                      No._____

SRU BIOSYSTEMS, INC. _____, Plff(s).

v.

DOUGLAS HOBBS _____, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)


## CIVIL ACTION COVER SHEET
## INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

BA.1 claims relating to the governance and conduct of internal affairs of entities
BA.2 claims relating to employment agreements
BA.3 claims relating to liability of shareholders, directors, officers, partners, etc

BB.1 shareholder derivative claims
BB.2 claims relating to or arising out of securities transactions

BC.1 claims involving mergers, consolidations, sales of assets, issuance of debt, equity and like interests

BD.1 claims to determine the use or status of, or claims involving, intellectual property
BD.2 claims to determine the use or status of, or claims involving, confidential, proprietary or trade secret information
BD.3 claims to determine the use or status of, or claims involving restrictive covenants

BE.1 claims involving breaches of contract or fiduciary, fraud, misrepresentation, business torts or other violations involving business relationships

BF.1 claims under the U.C.C. involving complex issues

BG.1 claims arising from transactions with banks, investment bankers and financial advisers, brokerage firms, mutual and money funds

BH.1 claims for violation of antitrust or other trade regulation laws
BH.2 claims of unfair trade practices involving complex issues

BI.1 malpractice claims by business enterprises against professionals

BJ.1 claims by or against a business enterprise to which a government entity is a party

BK.1 other commercial claims, including insurance, construction, real estate and consumer matters involving complex issues

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BD3 | Restrictive covenants | *(B) | ☒ Yes  ☐ No |

DUTY OF THE PLAINTIFF. The plaintiff, or plaintiff's counsel, shall set forth, on the face sheet, a statement specifying in full detail the facts upon which the plaintiff then relies for "presumptive" entry into the Business Litigation Session. A copy of the civil action cover sheet shall be served on all defendants, together with the complaint.

DUTY OF THE DEFENDANT. Should the defendant contest the entry into the Business Litigation Session, the defendant shall file with the answer (or dispositive motion) a statement specifying why the action does not belong in the Business Litigation Session. Such Statement shall be served with the answer (or dispositive motion).

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN THE TRANSFER OF THIS ACTION FROM THE BUSINESS LITIGATION SESSION TO ANOTHER APPROPRIATE SESSION OF THE SUPERIOR COURT.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Initial Rule 16 Conference.