IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SRU BIOSYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 05-201-SLR |
| ) | |
| DOUGLAS S. HOBBS, JAMES J. ) | |
| COWAN and COHO HOLDINGS, LLC, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

At Wilmington this 13th day of September, 2005, having considered defendants' motion to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 11) is denied for the reasons that follow:

1. **Introduction.** On April 7, 2005, plaintiff SRU Biosystems, Inc. ("SRU") filed suit pursuant to 35 U.S.C. § 256 against defendants Douglas S. Hobbs ("Hobbs"), James J. Cowan ("Cowan") and CoHo Holdings LLC ("CoHo"). (D.I. 1) Plaintiff seeks to have Dr. Brian Cunningham added as a named inventor on U.S. Patent No. 6,870,624 ("the '624 patent") and U.S. Patent No. 6,791,757 ("the '757 patent").[1] Alternatively, plaintiff seeks a Declaratory Judgment that the patents in suit are unenforceable because of the alleged inequitable conduct of the defendants

---

[1] Collectively referred to as "the patents in suit."

Hobbs and Cowan, the named inventors, as well as their attorneys. On May 7, 2005, defendants filed their answer and counterclaims for patent infringement against SRU. (D.I. 7) SRU has denied the counterclaim. (D.I. 8) On July 1, 2005, defendants moved to transfer the action to the United States District Court for the District of Massachusetts. (D.I. 11, 12) Plaintiff filed its opposition to which defendants have replied. (D.I. 15, 16)

2. **Background.** SRU is a Delaware corporation that developed and is close to commercializing a biosensor device to be used in the field of diagnostics and drug research. (D.I. 1 ¶ 10) SRU has over thirty pending U.S. and foreign patent applications that relate to the biosensor concept. Dr. Brian Cunningham ("Cunningham") is a research scientist, one of the founders of SRU and Chief Technical Officer of SRU. Cunningham resides in Illinois and has assigned all of his inventions to SRU. (Id. at ¶ 7)

3. Hobbs is the president of CoHo and Cowan is a manager of Coho. Cowan and Hobbs reside in Lexington, Massachusetts. Cowan and Hobbs are named inventors on the patents in suit and have assigned their rights in the patents to CoHo. Coho is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Burlington, Massachusetts. (D.I. 12, Ex. C, Ex. A) In addition to Cowan and Hobbs, Coho employs one other person. Coho does not have a place

of business in Delaware and does no business in the State. (D.I. 12, Ex. C)

4. In October 2000, SRU hired Hobbs as a consultant to assist Cunningham in the fabrication of the optical component of a biosensor product. Hobbs continued as a consultant until June 30, 2001. Cunningham filed a number of patent applications related to a biosensor device and assigned those applications to SRU. He recognized Hobbs as a co-inventor on certain applications. SRU contends that Hobbs initially agreed to assign his rights to the patents, but has had since refused to do so.[2]

5. Subsequently, Hobbs and Cowan filed their own applications on a biosensor and assigned those applications to CoHo, but did not name Cunningham as an inventor. Those applications were issued as the patents in suit.

6. **Other litigation.** In December 2004, SRU filed a lawsuit against Hobbs in Massachusetts state court for breach of contract and unfair competition. (D.I. 15, Ex. D) SRU seeks to enforce the terms of the MOU and requests a permanent injunction ordering Hobbs to execute an assignment of the applications to SRU. The initial filings describe the lawsuit as follows:

> This is a case . . . involving a claim to determine the use or status of intellectual property. The details are as follows: Defendant Hobbs worked for SRU as a consultant for the development of a novel

---

[2]SRU claims that Hobbs signed a Memorandum of Understanding ("MOU") memorializing this agreement.

> colorimetric resonant biosensor. Before beginning work as a consultant, Hobbs agreed to keep all information relating to the biosensor technology confidential . . . Hobbs executed a MOU in which he agreed to "assign irrevocably and exclusively on a royalty free basis to SRU . . . all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing and/or detection. Subsequent to signing the MOU, SRU filed numerous patent applications relating to the development of the biosensor technology . . . SRU has asked Hobbs to execute an assignment of the applications pursuant to the terms of the MOU, but Hobbs has refused to execute the assignment.

(D.I. 16, Ex. D)

7. On June 29, 2005, the Massachusetts Superior Court entered an interim order directing Hobbs to comply with discovery and deferring decision on the "prosecution bar" issue until a later date. (D.I. 15, Ex. G)

8. SRU has also commenced actions against Hobbs, Cowan and CoHo in Federal Court in Canada and in Ontario Superior Court. (D.I. 12, Ex. D, E) These lawsuits are pending.

9. **Standard of Review.** Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487

4

U.S. 22, 29 (1988); <u>Affymetrix, Inc. v. Synteni, Inc.</u>, 28 F. Supp.2d 192, 208 (D. Del. 1998).

10. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." <u>Bergman v. Brainin</u>, 512 F. Supp. 972, 973 (D. Del. 1981) (citing <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". <u>ADE Corp. v. KLA-Tencor Corp.</u>, 138 F. Supp.2d 565, 567 (D. Del. 2001); <u>Shutte</u>, 431 F.2d at 25.

11. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. <u>C.R. Bard, Inc. v. Guidant Corp.</u>, 997 F. Supp. 556, 562 (D. Del 1998); <u>Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.</u>, 2001 WL 1617186 (D. Del. Nov. 28, 2001); <u>Continental Cas. Co. v. American Home Assurance Co.</u>, 61 F. Supp.2d 128, 131 (D. Del. 1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor

of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

12. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

13. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and

(6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

14. **Discussion.** Defendants submit that transfer is warranted because Massachusetts is the more convenient form and SRU's preferred choice of forum. (D.I. 12) Specifically, Massachusetts is the principal place of business for SRU, CoHo and where Hobbs and Cowan reside. Further, all events, witnesses and the execution of the MOU occurred in Massachusetts while, conversely, there is no connection to Delaware. Moreover, because SRU's Massachusetts action involves the same set of events, defendants assert that the court should sua sponte consolidate the two cases as well as the Canadian actions and transfer to the District of Massachusetts.

15. SRU opposes transfer on several grounds. First, it contends that the action at bar and the Massachusetts case involve different patents, different issues and different legal standards. Second, as a Delaware corporation, SRU's choice of forum should be afforded deference. Third, SRU asserts that the motion to transfer is part of a strategy to undermine the litigation.

16. Weighing the arguments against the Jumara balancing test, the court finds that the asserted advantages of moving the case to the District of Massachusetts are insufficient to warrant a transfer. Defendants' complaints about litigating here are

outweighed by the fact that CoHo has enjoyed the benefits and protections as a limited liability company in Delaware and that the state has an interest in litigation regarding companies like SRU that are incorporated within its jurisdiction. Moreover, there is nothing of record to reflect any problems with potential witnesses refusing to travel to Delaware for trial. In fact, the record is devoid of any specific problems with witnesses, documents or business operations posed by litigating in Delaware. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose is not overly burdensome.

17. Clearly, the dispute at bar has become a very personal one between the parties. The dispute is now being litigated by four different courts in four different judicial systems, none of which has the authority to consolidate the cases.[3] The papers submitted in connection with this matter suggest that neither

---

[3] To the extent defendants implicitly argue that the "first-filed rule" applies, the court disagrees. The first-filed rule requires that, where cases are pending in "federal courts of equal rank", E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988), "the court which first had possession of the subject must decide it" while the second filed action should be stayed or transferred to the court where the first filed action is pending. Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)(quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532 (1824)). There are no other federal district court cases pending; therefore, this rule has no applicability.

plaintiff nor defendants are being entirely reasonable in their litigation strategies. Therefore, while the court's conclusion to deny transfer is consistent with its resolution of other transfer motions, the court will reconsider the transfer issue or, alternatively, impose sanctions if it determines that either plaintiff or defendants are abusing the judicial process while pursuing resolution of the lawsuit initiated here.

18. **Conclusion.** For the reasons stated, defendant's motion to transfer (D.I. 11) is denied.

_____
United States District Judge